Opinion of Chief Justice.
The marriage on which rests the claim of the demandant to recover dower, was solemnized in the county of Salem by one of the justices of the peace of this state, residing in the county of Gloucester.
Is this marriage lawful ?
The authority of a justice of the peace to solemnize marriage in this state, is drawn from legislative enactment, and its origin is coeval with the settlement of the stato. An act passed by the representatives of the eastern division of the province in the year 1668, provides that “ none but some approved minister or justice of the peace within this province, or some chief officer, whore such are not, shall be allowed to marry or admit of any person to join in marriage in their presence.” A similar clause is contained in an act passed by the legislature of the same division in the year 1675. An act of 1682 has these words: — “And the solemnization shall be performed by and before some justice of the peace or other magistrate within the province, unless the justice of the peace or magistrate refuse to be present, and the certificate thereof entered in the register of the town and county where it is furnished.” In the western division of the province, in the year 1682, the general assembly enacted “ that justices of the peace have power and are hereby authorized within their jurisdiction *to solemnize marriages.” In the year 1719, not long [*15 after the change from the proprietary to the royal government, an act of the council and general assembly of the province was passed, in which the authority of the justices is thus indirectly recognized. A penalty is imposed on “any minister, or pretended minister, of the gospel, justice of the peace or other person having, or pretending to have, authority to join persons together in the holy bands of *18 matrimony, who shall join any persons together in marriage, not having a license.” Our present act was passed under the revision of Judge Patterson, in 1795, until which time that of 1719 remained in force. Bern. Laws 180.
In a careful examination of the act, there is, in my opinion, nothing found to limit or confine the authority of a justice of the peace in the solemnization of marriage, to any particular county. On the contrary, the language is of the most broad and comprehensive character. By the second, and in this respect, the principal section, it is enacted, “ that every justice of the peace of this state and every stated and ordained minister of the gospel, shall be and hereby is authorized and empowered to solemnize marriage between such persons as may lawfully enter into the matrimonial relation.” Who then may solemnize marriage ? Every justice of the peace of this state. Where? The words “within their jurisdiction,” found in the act of 1682, are here omitted, and as may be fairly inferred, with design; leaving his authority as, extensive in territorial limit, as the power by which it was conferred. Between whom ? Not merely between such persons as may present themselves before him in the county of his residence, but between such as may lawfully enter into the matrimonial relation. The manner in which the other class of persons authorized to solemnize marriage is introduced and spoken of strongly supports the conclusion that the legislature had not in this section, and in conferring this authority, the slightest view to confine it to particular districts. “ Every stated and ordained minister of the gospel.” The argument which would seek to confine the authority to his own congregation, or to those residing within the bounds of his charge, or within the .limits of the presbytery, or association, or diocese, to which he may belong, or even to persons of his own religious persuasion, would meet with little attention. Why should the words “ Every justice of the peace of this state,” *16] be *construed with less liberality ? In almost all the *19 religious denominations to be found among us, the minister •is placed over one distinct congregation; sometimes over more; but always clearly understood and defined. His jurisdiction, if I may be allowed the expression, is over a particular people. So in respect to ordinary official duties, the jurisdiction of a justice is over a single county. What .sound process of reasoning, what just principles of construction, can confine the justice, and leave the minister at large to perform the ceremony in any quarter of the state ?
In this section the legislature seem scrupulously to have avoided all allusion to internal divisions of territory. The inference of design can scarcely be resisted. They have not used the common phrase, justices of the several counties of this state, but as if studiously to avoid any doubt which might then arise, they have employed the broadest expression possible, every justice of this state.
The strongest argument opposed to this construction of the act, is that, inasmuch as the authority is granted to a justice of tho peace, an officer having a known territorial jurisdiction, the conclusion follows, that it was intended to be exercised within the same limits only. This argument might be very difficult to resist, if there was any natural connection between the solemnization of marriage and the ordinary official duties of a justice. Being familiar with the legal rule which limits the extent of the one, we are prone as a matter of course, and without reflection, to apply tho same rule to the other. We have seen, however, that no such limitation is to be found in the words of the act. Still less can it result from any principle which may necessarily attach the exercise of the power to any particular locality. The ordinary official duties of the justice require a prescribed sphere. The subjects of cognizance, as well as territorial extent, must be fixed. How far his process may go, whore liis control may extend, must be defined. The intervention of others is requisite; officers to execute his process, jurors to try matters in difference, the accuser and the accused, *20 must also appear before him. A fixed place whither the parties may resort, and where documents and records may be found, is essential to public convenience. The solemnization- , of marriage has no occasion for any of these things, and ought not, therefore, to be confined to the same limits, unless by plain *17] legislative requirement. A mere designation by official name, does not necessarily carry with it the adjunct of territorial jurisdiction, unless something in the nature of the-.duty to be performed requires it. A justice of the peace does not lose his official character when he has passed into-another county. If a law declared that every justice of the peace should be exempt from arrest on process in civil actions, issued by another justice of the peace, can any one suppose the exemption would extend only to the county of his residence ? Would he not be equally protected in every part of the state? Out of-a particular county he may not-exercise his ordinary functions, and the reason is, that by virtue of his commission and by the principles of the common law and statutory regulations, for the purposes of the-public weal, they are confined to a specified district. But wheresoever he may be, so long as he holds -his commission,, he is a justice of the peace, and the legislature may properly confide to him the authority of marriage to be exercised, at-any place, within their control.
The conclusion drawn from the generality of the second section .is strongly 'supported by the provision of the ninth. Every justice of the peace and minister of the gospel, is required to transmit a certificate of each particular marriage within six months, to the clerk of the Court of Common Pleas of the county in which it was solemnized. This mode of expression affords a strong legislative exposition of the authority of the justice, that he may, and rightfully, legalize the union in some other county than that in which he resides and for which, as to his ordinary duties, he is commissioned.
*21 From this view of the subject I am entirely satisfied that we are bound to answer the question proposed in the affirmative — that the verdict is right, and that judgment should be rendered for the demandant.
Opinion of Justice Fokd.
The question arising in this action of dower, whether the demandant, Mary Pearson, was ever lawfully married to her alleged husband, John Pearson, was reserved at the circuit for argument at bar. The marriage was solemnized before William Harrison, esq., who was a justice of the peace for the county of Gloucester; but the place where lie performed the ceremony was nowhere within the limits of the county for which he was commissioned, but in the county of Salem. The parties thus joined ^together were [*18 not related within any prohibited degree, nor under any disability for want oí age, or understanding; they were free, able and willing, as it respected themselves, and they contracted marriage before him in words of the present tense, taking each other as husband and wife. I consider it to have been long and fully settled in law, that such is a valid marriage, even if William Harrison, esq., had not been a justice of the peace. It is a maxim in the common law, as ancient as the law itself, that “ consensus, non coneubitus, fácil nupiias it is the contract makes the marriage. Such also has ever been the law or maxim of the church, in all ages, as well as of the common law. Courts of justice are not authorized to alter the law without legislative authority in any case, and most assuredly not in a case of such universal importance as that of marriage. In Wigmore’s case, 2 Salk. 438, it was ruled by the whole court that a contract made by words in the present tense, as, “ I take you to be my wife,” is a lawful marriage. The same point was considered as fully established so far back as Co. Lit. 33, a ; and it has been handed down through all intermediate times, until the present. See Holt v. Ward, *22 2 Sira. 937; 1 Bl. Com. 433; Reed v. Prosser, Peake N. P. Cas. 231. The same thing is held in the Supreme Court of the state of New York, Fenton v. Reed, 4 Johns. Rep. 54. It was never held essential to the validity of the contract that it should be made in any particular place, or in the presence of one person more than another, provided that it could be sufficiently proved. Fashion prescribes forms of .celebration, and without attending to them, it may not be considered a fashionable marriage ; but the laws of fashion bind those only who choose to be bound by them. The common law requires nothing more of parties who are under no legal disability, than proof of a contract, made in words of the present time, as we take each other now ; not that we will, at a future time, take each other, for this-amounts to no more than an engagement which may never be fulfilled. But though the common law requires-nothing more than a contract, still the proof of it is indispensably necessary ; because if it cannot be proved, it is the-same as none, and must be treated as none; from whence-arises the heavy obligation which parties lie under to themselves, of solemnizing it before one or more competent and credible witness or witnesses, such as parents, relations, friends or neighbors. Of the sufficiency of this proof, or evi*19] deuce, ^will depend the honor or shame of the parties,, the legitimacy of their issue, and the dearest happiness and future fame or infamy of their families; and therefore the marriage contract ought to be provided with such strong and abundant evidence that not a shade of doubt can ever rest on the fact. But though the common law absolutely requires proof of the contract of marriage, it does not specify who shall be the witnesses any more than who they shall be in the case of a will, a deed, or a bond. William Harrison, esq., supposing him not to have been a justice of the peace, was as competent to prove it, as a magistrate, a clergyman or a religious society, according to the most-established principles of the common law, which the consti *23 tution of the state makes the law of the land, except so far as it may be repealed or altered from time to time by the legislature.
The question then is whether the legislature has ever repealed or altered the law of marriage. Now our whole statute book shews but one “ act concerning marriages,” which is to be found in Rev. Laws, 181; and it enacts “that every justice of the peace of this state,” every “ stated and ordained minister of the gospel,” and “ every religious society, according to its rules,” shall be empowered to solemnize marriages. This law does not prohibit other persons from solemnizing them, as they always had a right to do before this law was enacted. It contains no express words of prohibition nor any implication to that effect. To solemnize, means nothing more than to be present at a marriage contract, in order that it may have due publication before a third person or persons, for the sake of notoriety and the certainty of its being made. To solemnize or celebrate, means nothing more, and may bo done before parents, friends, or strangers, able to testify to the fact; but where there is only one witness, who may die at any moment, the parties incur an awful risk of losing the only evidence of the marriage and thereby of bastardizing their innocent offspring, and of losing the great material rights of protection and property. But in point of mere legal competency for witnessing or solemnizing a contract of marriage, the law has made no distinction of persons. Thus justices of the peace, ministers of the gospel, and religious societies, not only had the power like all other persons to witness and solemnize marriages, but they actually exercised this power, long before the present act was passed, *which proves that they always had a right to do it at [*20 common law, and as this act gave to them no new power, so it took none away. But suppose this act had gone to the whole extent of declaring that no other person or persons should solemnize marriages, except those mentioned in it, *24 such other persons would commit an offence against the act by solemnizing marriages, for which they might be punished, but still the marriage contract between the parties themselves would remain valid. During the commonwealth of England, Parliament passed a law requiring all marriages to be solemnized by justice^ of the peace, yet a marriage solemnized before a clergyman was holden by all their courts to be valid as between the parties, though the clergyman Avas punishable. Só the solemnization of marriage in England before a popish priest, was always holden valid as between the parties, though the statute prohibited such priest from doing it, and for the act he was exposed to punishment. See the cases collected on this subject in Reeves Dom. Rela. 198. Our act empowers an ordained minister of the gospel to solemnize marriages ; but suppose a minister of the gospel should do it before he is ordained, can any person believe that the marriage itself Avould be invalid, and that either of the parties might go away and any time afterward contract new alliances? Our statute prohibits ministers of the gospel from solemniziug the marriage of persons under age, without the consent of parents or guardians, under a very heavy penalty ; but this does not render the marriage void ; on the contrary, it remains sacred and inviolable, and is the very thing that aggravates the offence.
What then, it may be asked, was the public use of the act in question, if justices of the peace, clergymen and religious societies, had poAver to solemnize marriages as well before the passing of it as since. I answer, that they Avere the persons who had been resorted to by almost all classes of society, as if by universal custom, to be the witnesses of this solemnity, on account of the gravity and respectability of their characters, and one of the uses of this invaluable statute was, to compel them to make a record of all these marriages by certifying them into the clerk’s office of the county, there to remain of record to future times, to effect the most useful public as well as private interests. For the *25 same reason, they were the persons who solemnized almost, or quite all, the clandestine marriages "‘between persons [*21 under age, who ran away and rushed inconsiderately into this contract, without the approbation or knowledge of parents, guardians or others, having the care of them ; and this act was intended to prohibit any justice of the peace or other person, under a severe penalty, from having such marriages solemnized before them ; but it neither declares such marriages to be void, nor had it any such an intent; and a court of justice must have great firmness, or some quality that might receive a much harsher name, to rescind a marriage contract after it had been fully made, because the parties had not complied with certain forms. The parties may have lived together for years, as in this case, unconscious and unsuspicious of a flaw in the form; their honor unsullied, their rank in society elevated by their virtues, their property enlarged by honest industry and their houses filled with sons and daughters. The withering effects of declaring a marriage null and void, from the beginning, have been sufficient to appal, not courts of justice only, but courts of the church, in all ages, where the parties had taken each other as husband and wife by words of solemn contract in the present tense, in the presence of a crediblo witness or witnesses, and the contract could be fully proved. The British Parliament have lately repealed their old common law, by prescribing the manner in which marriage shall be solemnized, and adding an express clause that marriage in any other form shall be void, but it is obnoxious to the country, to the wisest, and best and most virtuous men among them, as well, it would seem, as to their courts of justice, and it is yet a problem whether they will not connive at the evasion of it. Our legislature have added no such negative clause to the marriage act of New Jersey, and it cannot be done by the authority of the court. At all events, William Harrison, esq., was a justice of the peace of this state, and either way the marriage contract solemnized before him, between the parties, was valid.
*26 Opinion of Justice Drake.
The sole question presented by this case is, whether in New Jersey, a justice of the peace can. lawfully solemnize marriages in any county, except that for which he is commissioned to act as a justice of the peace. The authority to solemnize marriages is contained in the 2d section of the act upon that subject, Rev. Laws, p. 181; by which it is enacted, *22] “ that every justice of the peace, *and every stated and ordained minister of the gospel, shall be, and hereby is authorized and empowered to solemnize marriages between such persons as may lawfully enter into the matrimonial relation " — No restrictive words are contained in the act, by which it can be inferred that the legislature intended to confine the authority of the justices, in this respect, to one county. Had this authority partaken of the nature of powers, or duties, already entrusted to these officers, and exercised merely within the limits of a particular county, or been intended to aid in the more perfect discharge of such powers, or duties, it would be right to confine such additional or auxiliary power, within the same limits as those with which it was connected. But this is a distinct, isolated authority, vested in justices of the peace for public convenience, having no connection with their ordinary duties as officers of particular counties; — an authority, which the legislature has not thought proper to limit, which there are no very strong reasons for limiting, and under which, it appears from this case, that a practice has already commenced, in some parts of the state, which would cause a confined construction of the statute to be attended by the most painful consequences. I am of opinion, therefore, that the marriage, in this case, was lawful, and’ that the rule to shew cause should be discharged.
Judgment for demandant.